Hen-dersoN, Judge,
 

 delivered the opinion of the Court;
 

 This case depends on the operation of the words
 
 “ shall be immediately set at
 
 liberty,” in the first section of the act of 1773 : that is, whether where a debtor is confined in close jail under one process, and has taken the hounds under another, such order of liberation, as has been made in this case, extends to discharge him from the hounds of the-prison. And it is argued that it does not, because a prisoner of the latter description is not entitled to the benefit of tliat section of the act, for that section extends to those, only who are in close jail. It docs not follow that because none but a close prisoner can be permitted to take the oath of insolvency, that the liberation should extend to such only. It extends
 
 to all imprisonment for debt.
 
 None but close prisoners can take the oath; for the close confinement is required as a teste of the truth of the oath, and perhaps as a judgment for the imprudence of going in debt, beyond the ability to pay. Yet, when it is undergone, at the instance of any one, all those who have evidenced a like disposition to coerce payment by imprisonment, are alike affected. The words of the act, as well as its spirit, seem to require this construction. The Sheriff, when he produces the body of the debtor, is required to produce a
 
 *272
 
 list of the process, &c. by which he holds him in confinement. He is to be set at liberty, not only from close imprisonment, but
 
 generally;
 
 that is, as we consider it, from. all imprisonment for debt. And the third section, by using the words “ in prison,” omitting the word
 
 “
 
 close,” shews that the Legislature recognized two kinds of imprisonment, the one close jail, that is, the walls of the jail, and the other, the rules of the prison, as directed by the act of 1741: which word
 
 “
 
 close,” refers personally to the situation of the applicant, as a pre-requisite for taking the oath ; but is omitted in that part which directs his discharge
 
 ;
 
 and pre-supposes that there may be others who hold him in confinement, by directing them to be notified. Besides, what can this creditor complain of? If close jail be required as a teste and punishment, it has already been undergone in the same manner, and for the same time, that it would have been undergone, if the bounds, as to him, had not been taken. He lias the same opportunity of offering opposing evidence, and of cross-examination; for he is to be notified. And we cannot perceive that his situation is in any way different as to the coercive powers of imprisonment, than if the debtor had remained in close jail. For the same thing is effected by another creditor in the same jail, and during the same period of time. If the Defendant be discharged in law from the imprisonment in this case, the bond which was taken to secure the creditor against an escape, is also discharged. For the law directs its officer, at the instance of the creditor, to confine the debtor; and the law directs its officer to discharge him. Of course, all means taken to that eM, to-wit, the confinement, must cease, when that end ceases to exist. But we cannot distinguish this case from that of Burton and Dickens, decided at this term: For that which will prevent an arrest, will justify a discharge ; and the debtor who takes the 40s. oath, stands in the same situation as to the bill of rights, with the debtor who surrenders up his property under the third section of the act of 1773. Let judgment be entered for the Defendants.